UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Case No. 1:23-cv-566 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| ALBIREO PHARMA, INC., RONALD H.W. | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| COOPER, DAVID CHISWELL, PH.D., | : **THE SECURITIES EXCHANGE ACT** |
| MICHAEL GUTCH, PH.D., STEPHANIE S. | : **OF 1934** |
| OKEY, M.S., DAVEY S. SCOON, SUSAN | : |
| ALESINA, HABIB DABLE, CRAIG | : **JURY TRIAL DEMANDED** |
| HOPKINSON, M.D., | : |
| | : |
| Defendants. | : |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Albireo Pharma, Inc. ("Albireo or the "Company") and the members Albireo board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Albireo by affiliates of Ipsen Pharma SA, a French *société anonyme* ("Ipsen").

2.  Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on January 23, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Anemone Acquisition Corp. ("Merger Sub"), a wholly owned subsidiary of Ipsen Biopharmaceuticals, Inc. ("Parent"), will merge with and into Albireo, with Albireo continuing as the surviving corporation and as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Parent and Merger Sub are both affiliates of Ipsen. Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated January 8, 2023 (the "Merger Agreement"), each Albireo common share issued and outstanding will be converted into the right to receive: (i) $42.00 per share owned; plus (ii) one non-tradable contingent value right ("CVR") representing the contractual right to receive contingent payments of up to $10.00 per CVR in accordance with the terms and subject to the CVR Agreement (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of Albireo's outstanding common stock and will expire on February 21, 2023 (the "Tender Offer").

3. Defendants have now asked Albireo's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Albireo's financial projections relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview. The failure to adequately disclose such material information constitutes

a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Albireo stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Albireo's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Albireo common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Ronald H.W. Cooper has served as a member of the Board since November 2016 and is the Company's President and Chief Executive Officer.

11. Individual Defendant David Chiswell, Ph.D. has served as a member of the Board since November 2016 and is the Chairman of the Board.

12. Individual Defendant Michael Gutch, Ph.D. has served as a member of the Board since November 2016.

13. Individual Defendant Stephanie S. Okey, M.S. has served as a member of the Board since June 2018.

14. Individual Defendant Davey S. Scoon has served as a member of the Board since April 2013.

15. Individual Defendant Susan Alesina has served as a member of the Board since August 2022.

16. Individual Defendant Habib Dable has served as a member of the Board since August 2022.

17. Individual Defendant Craig Hopkinson, M.D. has served as a member of the Board since December 2022.

18. Defendant Albireo is incorporated in Delaware and maintains its principal offices at 53 State Street, 19th Floor, Boston, Massachusetts 02109. The Company's common stock trades on the NASDAQ Capital Market under the symbol "ALBO."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.  **The Proposed Transaction**

21. Albireo, a commercial-stage biopharmaceutical company, focuses on the development and commercialization of novel bile acid modulators to treat orphan pediatric liver diseases and other liver or gastrointestinal diseases and disorders. The Company offers Bylvay for the treatment of progressive familial intrahepatic cholestasis, as well as in Phase III clinical trial for treating biliary atresia, alagille syndrome, and rare and life-threatening disorder to children; and Elobixibat for the treatment of chronic constipation and other functional diseases. It also engages in the developing of A3907, which is in Phase I clinical trial for the treatment of adult liver diseases; and A2342, a preclinical candidate to treat adult viral and liver diseases. The Company has a license agreement with EA Pharma Co., Ltd. for the development and commercialization of elobixibat. Albireo is headquartered in Boston, Massachusetts.

22. On January 9, 2023, Ipsen and the Company jointly announced the Proposed Transaction:

> **PARIS, FRANCE & BOSTON, U.S.,** 09 January 2023 – Ipsen (Euronext: IPN: ADR: IPSEY) and Albireo (Nasdaq: ALBO) today announced that they have entered into a definitive merger agreement under which Ipsen will acquire Albireo, a leading innovator in bile-acid modulators to treat pediatric and adult cholestatic liver diseases. The anticipated acquisition will enrich Ipsen's Rare Disease portfolio and pipeline.
>
> The lead medicine in Albireo's pipeline is Bylvay® (odevixibat), a potent, once-daily, oral, non-systemic ileal bile acid transport inhibitor (IBATi). Bylvay was approved in 2021 in the U.S. for the treatment of pruritus in patients three months of age and older with progressive familial intrahepatic cholestasis (PFIC), and in the E.U. for the treatment of PFIC in patients aged six months or older. Pruritus is one of the most prominent and

problematic manifestations of the disease, often resulting in severely diminished quality of life. Bylvay has orphan exclusivity for the approved indications in PFIC in the U.S. and E.U.

"We are excited about the potential of Albireo's assets and scientific expertise, which we gain through this acquisition, and we believe this is a compelling growth opportunity for Ipsen." said David Loew, Chief Executive Officer of Ipsen. "Our Rare Disease franchise is strengthened with Bylvay, which, in addition to being the first-approved treatment in PFIC, has two further indications being investigated in rare liver conditions that are underserved. Additionally, Bylvay and the clinical and preclinical novel bile acid transport inhibitors in Albireo's portfolio complement our own pipeline in liver disease."

"Unwavering dedication to patients and commitment to science have always been the north star for Albireo. This focus has driven us to develop and gain approval for Bylvay as the first drug treatment for PFIC," said Ron Cooper, President and Chief Executive Officer of Albireo. "Our talented team at Albireo have advanced the first Phase III studies in three different pediatric liver diseases while discovering two promising new clinical stage bile acid modulators. We believe that Ipsen is well positioned to apply its global R&D and commercial capabilities to make these medicines available to more cholestatic liver disease patients and accelerate the mission of providing hope for families."

In addition to this lead indication, Albireo announced in December 2022 that supplementary regulatory filings have been made for Bylvay in the E.U. and the U.S. for Alagille syndrome (ALGS). ALGS is a rare, genetic disorder that can affect multiple organ systems, including the liver, with a paucity of bile ducts preventing bile flow from the liver to the small intestine. The most debilitating symptom of ALGS is severe pruritus. In the Phase III ASSERT trial, treatment with Bylvay met both primary and secondary endpoints and was associated with statistically significant improvements in

pruritus severity and reductions in serum bile acid levels compared to placebo, and was well tolerated.

Furthermore, Bylvay is in late-stage development for biliary atresia (BA). It is currently being investigated in the BOLD study, the first, prospective double-blind, Phase III clinical trial in BA, a rare, pediatric liver disease that can result in cirrhosis and liver failure and is the leading cause of liver transplantation among children.[7] Orphan drug designations have been granted in both ALGS and BA indications in the U.S. and E.U.

As part of the transaction, Ipsen will also acquire Albireo's clinical stage asset A3907, a novel oral systemic apical sodium-dependent bile acid transporter (ASBT) inhibitor currently in development for adult cholestatic liver disease, such as primary sclerosing cholangitis (PSC), which could complement Ipsen´s existing development programs. In addition to Bylvay and A3907, Albireo's pipeline includes A2342, an oral systemic sodium-taurocholate co-transporting peptide (NTCP) inhibitor being evaluated for viral and cholestatic diseases, which is moving ahead in investigational new drug (IND)-enabling trials.

### Financial highlights

The acquisition of Albireo will provide immediate incremental sales and strengthen Ipsen's rare disease infrastructure. Albireo guided for total Bylvay revenues of $24 million for 2022. Given the level of ongoing R&D expenses, the transaction is expected to be dilutive to Ipsen's core operating income until the end of 2024. This is in line with Ipsen's medium-term outlook regarding its strategic focus on building a high-value and sustainable pipeline through external innovation. The Group will provide its annual guidance for 2023 in February.

### Transaction details

Under the terms of the agreement and plan of merger, Ipsen, through a fully-owned subsidiary, will initiate a tender offer

to acquire all outstanding shares of Albireo at a price of $42.00 per share in cash at the closing of the transaction, for an initial estimated aggregate consideration of $952 million plus one contingent value right (CVR) per share. Each CVR will entitle its holder to deferred cash payments of $10.00 per CVR payable upon the U.S. Food and Drug Administration (FDA) approval of Bylvay in the Biliary Atresia indication at the latest by 31 December 2027, allowing for a potential increase in the number of patients in the BOLD study.

The $42.00 per-share cash consideration represents a premium of 104% compared to Albireo's 1-month volume-weighted average price of $20.60 preceding announcement of the transaction. The transaction will be fully financed by Ipsen's existing cash and lines of credit. The Board of Directors of Albireo has unanimously approved the transaction and recommended that the stockholders of Albireo tender their shares in the tender offer.

The closing of the tender offer will be subject to customary conditions, including the tender of shares which represent at least a majority of the total number of Albireo's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the receipt of consents of, or filings with, any governmental body or pursuant to certain foreign antitrust laws and the expiration of any applicable waiting period and other customary conditions. Upon the successful completion of the tender offer, Ipsen would acquire all shares not acquired in the tender offer through a second-step merger for the same consideration that the tendering stockholders will receive in the tender offer. It is anticipated the transaction will close by end of Q1, 2023.

**Advisors**

Goldman Sachs is acting as exclusive financial advisor to Ipsen and Orrick Herrington & Sutcliffe LLP as legal counsel to Ipsen. Centerview Partners is serving as exclusive financial advisor to Albireo. Chestnut Partners also provided

> advice to Albireo. Paul, Weiss, Rifkind, Wharton & Garrison and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C are serving as legal counsel to Albireo.

\* \* \*

23. It is therefore imperative that Albireo's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

24. On January 23, 2023, Albireo filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Solicitation Statement fails to provide material information concerning financial projections by Albireo management and relied upon by Centerview in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview with forming a view

about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Albireo management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT and Unlevered Free Cash Flow but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. The Solicitation Statement also fails to disclose the specific risk adjustments made by Albireo management related to the Company's long-range operating plan.

28. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analysis*

31. With respect to Centerview's *Analysis of Consideration*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 11.5% to 14.5%; and (ii) Albireo's weighted average cost of capital as analyzed by Centerview.

32. With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each company selected by Centerview for the analysis; and (ii) the basis for selecting a reference range of EV/2023E Revenue Trading Multiples of 3.0x to 6.5x.

33. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each transaction selected by

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Centerview for the analysis; and (ii) the basis for selecting a reference range of EV/NTM Revenue Multiples of 5.0x to 9.5x.

34. With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 11.5% to 14.5%; (ii) the implied terminal value of the Company; (iii) the Company's weighted average cost of capital; (iv) the basis underlying the assumption that Albireo's unlevered free cash flows would decline in perpetuity after December 31, 2045 at a rate of free cash flow decline of 60% year over year; (v) the estimated total number of fully diluted outstanding shares of Albireo as of January 6, 2023; (vi) the expected dilution associated with the assumed equity raises in 2023; and (vii) the specific risk adjustments made to derive the risk-adjusted estimates of the projected unlevered free cash flows to be generated by the Company.

35. With respect to Centerview's *Analyst Price Target Analysis*, the Solicitation Statement fails to disclose the Wall Street research analyst reports reviewed and the price targets published by each analyst.

36. With respect to Centerview's *Precedent Premia Paid Analysis*, the Solicitation Statement fails to disclose: (i) the transactions selected; (ii) the premiums paid in those transactions; and (iii) the inputs and assumptions underlying the application of a range of 50% to 80%.

37. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

40. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

42. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation

13

of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

43.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

44.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

45.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

### COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and
### Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

46.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

47.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

48. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

49. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

50. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

51. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Albireo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Albireo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of Albireo, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Albireo, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

56. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their

acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 23, 2023                                                     MELWANI & CHAN LLP

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Floor
New York, New York 10036
Tel: (212) 382-4620
Email:  gloria@melwanichan.com

*Attorneys for Plaintiff*